No. 6300.

### NATHANIEL MONTROSS VS. SAMUEL JAMISON.

Where property sold at public sale is bought by three persons in indivision, each being entitled, by agreement among themselves to a certain undivided portion of the property, any one of the common owners who has paid his share of the adjudicated price, has a right to demand from the sheriff a deed of sale for his undivided portion; and no one of the co-proprietors is entitled to oppose the demand on the ground that the taxes on the property have not been paid.

APPEAL from the Fifth District Court, parish of Orleans.   *Cullom, J.*

*A. & W. Voorhies* for the N. O. National Banking Association.

*Armand Pitot* for the Citizens' Bank.

*T. Gilmore & Sons* for the Hibernia Bank.

The opinion of the court was delivered by

DEBLANC, J.   In and by a rule filed on the 16th of November, 1875, the Citizens' Bank prays that the civil sheriff of the parish of Orleans, be ordered to complete and give to said bank a deed of sale for the two undivided fifths of the property known as the Imperial—the whole of which, on the 18th of February 1873, was sold under execution, and adjudicated—as an entirety—to Paul Fourchy, for the New Orleans National Banking Association, the Hibernia National Bank and the Citizens' Bank.

The adjudicatees paid in full the amount called for by the writ under which said property was seized and sold, and—between them—they fixed as follows the proportion of each of them in the Imperial: the Citizens' Bank two fifths, the Hibernia one fifth, the New Orleans National Banking Association, the balance.   Under subsequent proceedings by the creditors in the first and aforesaid execution, the whole of the same property was again seized and advertised for sale.   At the second sale, the two fifths previously adjudicated to the New Orleans National Banking Association were purchased by one of the seizing creditors.

That Banking Association alone opposes the granting of the order sought to be obtained by the Citizens' Bank.   Its opposition is based on the grounds:

1.   That the Imperial was adjudicated as a whole, not in parts; that but one title can be given, for the whole—to the three purchasers, and that no separate title can be given to each of them.

2.   That the taxes due, or which—from the recorder's certificate, appear to be due on said property, have not been paid.

3.   That—as the proportion of the New Orleans National Banking Association in the Imperial, was again seized and again sold—at the suit of the creditors by whom it had already been seized and sold—a decree

Montross vs. Jamison.

allowing the demand of the Citizens' Bank, might be invoked by those creditors as a bar to any attempt—on the part of the New Orleans National Banking Association, to compel a completion of its title under the adjudication of the 18th of February 1873.

Of these several grounds, not one is tenable.

It is admitted—by the New Orleans National Banking Association—that, after the adjudication to Fourchy, then acting for the three banks, the proportion of each of the banks was fixed by and between the interested parties, and—by that mutual agreement, the plaintiff in rule became the owner of two undivided fifths of the Imperial. At that time and under that agreement, would the New Orleans National Banking Association have objected to the completion and delivery, by the sheriff, of a separate deed of sale to each of the purchasers, for the acknowledged share of each of them in the joint purchase? Assuredly not. That bank can not justly, now, raise an objection, the maintenance or dismissal of which can neither increase nor reduce its rights.

The Citizens' Bank has bought—that is shown by the return on the writ: of the property adjudicated to the three banks, the Citizens' owns the two fifths, that is thrice judicially admitted—: of the proportion of the price for which it was liable, the Citizens' Bank has paid every cent, that is proven. That bank is asking, not the recognition of a disputed title, but the evidence of a title disputed by none, recognized by all. Under what rule of law or equity, could we ignore and disregard the sheriff's adjudication, the payment of its price, the parties' agreement as to their respective shares, and suspend the issuance to plaintiff of the muniment of its title ?

The naked allegation that the taxes due on the Imperial have not been paid, is contradicted by facts and presumptions, by tax-receipts, the silence of the sheriff, the inaction of the collector. The certificates of recorders—here and elsewhere—often show, not what is due, but what was due. This, however, is no concern of the New Orleans National Banking Association, and—inasmuch as the collector does not complain, we take for granted that the bank has settled to his satisfaction.

If, as contended by the Banking Association, it has not forfeited or lost the title which it appears to have acquired on the eighteenth of February 1873, the apprehension that our decree on the rule might impair that title, or prevent its completion, is certainly unfounded. Far from inflicting the apprehended injury, that decree—if its effects extend beyond this controversy, could only be construed as the recognition of a common title, a fraction of which is claimed by appellants.

The facts disclosed on the trial justify the judgment of the lower court, and that judgment is affirmed with costs.